ANDREW SNOWHILL et al. v. REBECCA SNOWHILL.

The lands of an infant may be sold for his benefit, and the property changed from real to personal, under the authority and direction of the legislature, without regard to the interests of real or personal representatives. The validity of the title under such sale does not depend on the assent of the infant: he cannot disaffirm the sale on coming of age.

Courts of equity may, and frequently do, change the character of property belonging to infants or lunatics. They will permit trustees or guardians to do it where it is manifestly for the advantage of the owner, without reference to the contingent interests of real or personal representatives.

The authority of the legislature to convert the property of an infant from real to personal, cannot be questioned; and where there is no breach of trust, or violation of good faith, or sinister design, on the part of the guardian who applies for the law, the act cannot be impeached.

Where the property of an infant is changed by authority of a competent tribunal, from real to personal, it will, upon the death of the infant, go to his personal representatives.

Where there has been a breach of trust, as where the trustee or guardian has abused the trust, and changed the quality of the estate to subserve his own interest, there arises an equity to undo the act in favor of the person whose rights are injured.

But there is no equity between the personal representative and the heir, as such. They are both volunteers: each must take what they find at the death of the person entitled for life, in the condition in which they find it.

THE bill in this cause was filed on behalf of the heirs at law of George E. Snowhill, deceased, who died a minor, intestate, against his administratrix, for an account of the proceeds of the sale of the real estate of said intestate, sold in his life-time by his guardian, by virtue of an act of the legislature of the state of New-Jersey, passed upon the petition of said guardian. The material facts disclosed by the bill, appear in the opinion of the chancellor. There was a general demurrer to the bill for want of equity.

The cause was heard upon the demurrer.

*Williamson*, for defendant, in support of the demurrer.

*Scott*, for complainants, contra.

[Snowhill et al. v. Snowhill.]

Cases cited by defendant's counsel. 1 *Vesey*, 454, 462; 2 *Eden*, 148; 2 *Vesey*, 71; 3 *Bro. C. C.* 515; 5 *Vesey*, 303; 3 *Dow*, 207; *Ambler*, 419; 2 *Eden*, 153; 3 *John. Chan. R.* 570; 1 *Vern.* 435.

Cases cited by complainants' counsel. 1 *P. W.* 713, 215; 2 *Atkyns*, 533; 1 *Bro. C. C.* 497; 2 *Vern.* 52; 3 *P. W.* 217; 1 *Atkyns*, 573; 3 *P. W.* 271; 2 *Mad.* 180; 2 *P. W.* 176; *Ambler*, 370; 3 *Dow.* 337; 1 *Bro. C. C.* 66, 664; 1 *Fonb.* 413.

THE CHANCELLOR. George Snowhill, being seized in fee of certain property in the county of Middlesex, died in 1824, intestate, leaving a widow, Rebecca Snowhill (the present defendant,) and James E. Snowhill, an infant son, and his sole heir at law, surviving him. Letters of administration were granted to the widow; and the balance of personal estate in her hands, after the payment of debts, was sixteen hundred and six dollars and seven cents. In 1826, the mother of the infant, who was also his guardian, applied to the legislature of the state for authority to sell an undivided half of certain mills and premises, being the real estate, or part of it, that had descended to the said infant as heir at law of his said father; and having represented to the legislature that the sale of the property and placing out the proceeds thereof on interest would be advantageous for the infant, an act was obtained authorizing the sale of the said real estate by the said Rebecca, with directions that the proceeds of the sale should be placed on interest; one third part thereof for her own use, and the remaining two third parts for the benefit of the infant heir. The property was accordingly sold in April, 1827, for three thousand five hundred dollars, and the amount secured by mortgage. Some time after, the heir died, being still in his minority, and not having made a last will or testament; and the complainants in this suit, who are his heirs at law, claiming to be entitled to the proceeds of said sale, have filed their bill to recover the amount, excepting the interest on the one third part.

[Snowhill·et al. v. Snowhill.]

The defendant is the administratrix of the decedent, and claims to hold it as personal property.

The defendant has demurred to the bill; and the simple question is, who is legally entitled to the property—the heir at law, or the personal representatives.

The complainants' claim is a novel one; and the court, after looking into it with some solicitude, has been unable to perceive any sound principle to sustain it.

The sale was made, and the property changed from real to personal, under the authority and direction of the legislature. If the act of this high constitutional power could be impugned or drawn in question in any case, it certainly cannot in this; for there is no pretence that any fraud or other unjustifiable means were resorted to, to procure the passage of the law. It professed to act, and we may not doubt, did act, for the benefit of the infant; and in so doing, it is not perceived by the court that it transcended the limits of its power. It is not alleged that there was any breach of trust, or violation of good faith, or sinister design, on the part of the mother of the infant; the whole transaction was fair and honest.

Can we then question the authority of the legislature? Courts of equity may, and not unfrequently do, change the character of property. They will permit trustees or guardians to do it, when it is manifestly for the advantage of the infant: *Amb.* 419, *Inwood* v. *Twyne.* They will convert the property of a lunatic from real into personal for his interest, and this has frequently been done, without reference to the contingent interests of real or personal representatives : *Exparte Bromfield,* 1 *Ves. jr.* 462; same case, 2 *Ves. jr.* 69, in the matter of *Eunice Salisbury,* a lunatic, 3 *John. Chan. R.* 347. If the courts may do it, simply for the benefit or convenience of the owner, who is not qualified to act for himself, we can scarcely, at this day, call in question the power of the legislature itself. It is constantly exercised, and has been for many years. In some cases it may be exerted without sufficient caution; but there is no ground for such a supposition in the present instance.

[Snowhill et al. v. Snowhill.]

At the time of the death of the infant the property was changed. It was no longer real, but personal, and went properly into the hands of the personal representative. It must remain there, unless this court shall otherwise decree.

To authorise such interference on the part of the court, there must be some equitable ground; for this court, as well as the courts of law, must exercise its powers on known and established principles.

Where there has been a breach of trust, as where a committee or guardian is entrusted with the care of an estate, and has abused the trust, and changed the quality of the estate to subserve his own interest, there arises an equity to undo the act, in favor of the person whose rights are injured: 1 *Ves. jr.* 462. So in cases where money is agreed or directed to be laid out in land, and either through fraud or accident it is not done, the court, acting within its own peculiar sphere, will consider that done which ought to be done, and carry into effect the intention of the parties. There is a distinct and well known head of equity on which it rests its proceedings.

But there is no equity between the representative and the heir, as such. In the language of lord Rosslyn, in *Oxenden* v. *lord Compton,* 2 *Ves. jr.* 70: " They are both volunteers. Each must take what they find at the death of a person entitled for life, in the condition in which they find it. The legal right is not questioned: then upon what equity must I make this transmutation for the benefit of a person equally a volunteer?" And lord Thurlow, in the case already cited from 1 *Ves. jr.,* says, the change of the property being made for the benefit of the infant, it becomes indifferent whether it be for the benefit of the heir or personal representative afterwards. And he adds, the cases have gone upon the idea, that when it is found to contribute to the interest of the party to make the change, that has been thought so good a reason for it, as to exclude all considerations of hardship or an equity between representatives. The court ought to be very reserved in changing one species of property into another, and to do it only upon pressing occasions;

[Snowhill et al. v. Snowhill.]

and when it is done, the only ground upon which I can give it to the one party or the other, must be an equity so distinct as to govern it upon the proper rules of law. And chancellor Kent, in the case of lunacy in 3 *John. Chan. R.* 347, says, the governing principle in the management of the estate, is the lunatic's interest, and not the interest of those who may have eventual rights of succession.

The case cited by the counsel of the complainant, to prove that in a court of equity the heir is ever preferred to an administrator, is not strictly applicable. Lord Macclesfield does indeed make use of that very expression; and to prove the broad position, he adduces the common case, that if a man dies indebted by bond, in which he has bound himself and his heirs, and leaves real and personal assets, of each enough to pay the bond, and the assignee, as he has an election to come upon the real assets, does accordingly sue the heir, and recovers the debt against the heir, yet the heir shall recover back the money against the executor out of the personal estate : 2 *P. W.* 175, *Edwards* v. *the Countess of Warwick.* This case proves, that in the payment of debts, personal assets are first liable ; and of course to that extent, or in a matter of that kind, the heir is always preferred to the executor. This principle is well established. But it does not prove the proposition contended for by the complainants, nor can I find a single authority that does.

The fact urged at the bar, that the infant died before he arrived of age, and therefore there could have been no assent on his part, does not vary the case. The validity of the title did not depend on his assent. If he had lived he could not have disaffirmed the sale on his coming of age.

Upon the whole case I am of opinion there is no equity in the claim. The demurrer is well taken, and the bill must be dismissed, with costs.